# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHRISTOPHER DAVIS-CLAIR,<br><br>        Plaintiff,<br><br>v.<br><br>C.O. TURCK, C. FRANCOIS, K. O'DELL, and JOHN DOES 1 - 2,<br><br>        Defendants. | Case No. 17-CV-389-JPS<br><br><br>**ORDER** |

  Plaintiff, who is incarcerated at the Wisconsin Secure Program Facility ("WSPF"), filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #6).[1] Plaintiff has been assessed and paid an initial partial filing fee of $18.36. 28 U.S.C. § 1915(b)(4).

  The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

  A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*,

---

[1]Plaintiff inexplicably filed the same motion to proceed *in forma pauperis* one week later. (Docket #8). That second motion will be denied as moot.

490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (citations omitted); *accord Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Although he is currently housed at WSPF, Plaintiff's allegations relate to events which occurred at his previous institution, Green Bay Correctional Institution ("GBCI"). At some point (Plaintiff does not provide a date), Plaintiff was told that he would be transferred to WSPF. (Docket #1-2 at 1). Plaintiff spoke with a Defendant John Doe social worker that the move would lead him to attempt suicide, citing the increased distance from family support. *Id.* Later that day, Plaintiff wrote to "PSU," which the Court assumes stands for "Psychological Services Unit," asking to speak with someone about that concern. *Id.* The Defendant John Doe PSU supervisor did not respond to that request.

On January 15, 2016, Plaintiff had a hearing with a "PRC" committee, which included Defendants K. O'Dell ("O'Dell"), an offender class specialist, and C. Francois ("Francois"), the GBCI corrections program supervisor. *Id.* Plaintiff informed them that a transfer to WSPF may prompt suicide attempts, but they responded that "you are just going to have to deal with it." *Id.* Plaintiff attached an exhibit to his complaint which appears to be a report from that hearing. (Docket #1-2 at 5-6). The report indicates that the move to WSPF was prompted by Plaintiff's high security classification and his own misbehavior. *Id.* As support for denying Plaintiff's request to stay at GBCI, the committee cited Plaintiff's crime (murder), his two recent major conduct reports (both for assault), and certain unmet programming requirements. *Id.* The report acknowledges Plaintiff's threats of self-harm and says that his statements "should be communicated to PSU and Security staff at GBCI and at WSPF." *Id.* at 5.

On February 6, 2016, Defendant C.O. Turck ("Turck") told Plaintiff that he was being transferred to WSPF the next day. (Docket #1 at 2). Plaintiff asked Turck to summon a PSU worker and have him taken to an observation cell. *Id.* He apparently did not do so. *Id.* When Turck walked away, Plaintiff grabbed a razor and began cutting his wrist. *Id.* Turck returned and told Plaintiff to stop cutting himself, and Plaintiff refused. *Id.* Turck then got a nearby sergeant involved, who also told Plaintiff to stop. *Id.* Eventually, after being threatened with pepper spray, Plaintiff stopped cutting himself and was taken to "HSU," presumably the "Health Services Unit," to "get cleaned up." *Id.* Plaintiff was then taken to an observation cell in the restrictive housing unit. *Id.* The next day, Plaintiff was transferred to Dodge

Correctional Institution, not WSPF; Plaintiff does not say when the eventual transfer to WSPF occurred. *Id.*

Plaintiff alleges that if Turck would have gotten a PSU worker, he never would have cut himself. *Id.* He maintains that, pursuant to an administrative code provision, security staff are required to tell a psychologist if an inmate threatens suicide. *Id.* at 3. Plaintiff further alleges that all Defendants were placed on notice of his risk of suicide. *Id.* He believes that they should have placed him in observation or otherwise obtained help from PSU. *Id.* Plaintiff asserts that all Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. *Id.*

Claims for deliberate indifferent to an inmate's suicide risk are legion in federal courts, and so extensive case law has developed to interpret them. The basic formulation of the claim involves an objective and a subjective component. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). First, Plaintiff must show that the harm (or potential harm) was objectively, sufficiently serious and a substantial risk to his health. *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "It goes without saying that 'suicide is a serious harm.'" *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001) (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)).

Second, Plaintiff must establish that Defendants displayed deliberate indifference to his risk of suicide. *Collins*, 462 F.3d at 761; *Sanville*, 266 F.3d at 733. This, in turn, requires a dual showing that Defendants (1) subjectively knew that Plaintiff was at substantial risk of committing suicide and (2) were deliberately indifferent to that risk. *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003). As to the first prong, Plaintiff must prove that

Defendants knew—rather than merely should have known—of a significant likelihood that he might imminently seek to commit suicide. *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); *Matos*, 335 F.3d at 557. Plaintiff's allegations do not satisfy this element. For all Defendants save Turck, the only warning they received from Plaintiff about a suicide risk was his statements that a transfer to WSPF might cause him to attempt suicide. None received any indication that Plaintiff would *imminently* begin self-harming activity, and indeed he did not; the first alleged suicide attempt was weeks after he made the statements. As to Turck, Plaintiff's statements were more direct. He informed Turck that he wanted to speak with psychological services right away but Turck ignored his request. Still, Plaintiff does not allege that he told Turck he was contemplating suicide, only that he desired to speak with a psychologist. This is insufficient to put Turck on notice of Plaintiff's potential for suicide. *See Pittmann ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 776–78 (7th Cir. 2014) ("[A] prisoner's mere request to see a psychiatric crisis counselor does not, standing alone, put a prison officer on notice of the imminent possibility of suicide.").

As to the second prong, Plaintiff must establish that Defendants failed to take reasonable steps to prevent him from committing suicide. *Estate of Novack*, 226 F.3d at 529; *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005). This is a heavy burden; the Seventh Circuit has emphasized that deliberate indifference "comprehends more than mere negligence but less than the purposeful or knowing infliction of harm." *Estate of Novack*, 226 F.3d at 529; *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). Indeed, the Court of Appeals has characterized the required showing "as 'something approaching

a total unconcern for [the prisoner's] welfare in the face of serious risks.'" *Collins*, 462 F.3d at 762 (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)). Accordingly, to establish deliberate indifference, the plaintiff must present evidence "that an individual defendant intentionally disregarded the known risk to inmate health or safety." *Id.*; *Matos*, 335 F.3d at 557.

Plaintiff likewise fails to adequately allege this element. Plaintiff does not allege that the John Does did anything in response to his statements about potential suicide. However, Plaintiff also fails to allege what authority the John Does had to transfer him to an observation cell, which is the sole basis for his claim. Notably, he does not state that they provided deficient counseling which lead to psychological vulnerability and suicidal ideation. As to O'Dell and Francois, they took note of Plaintiff's statements and the hearing report states that security staff were to be informed of them. Rather than intentionally disregarding his suicide risk, this shows that they took active steps to abate the risk. This is true even considering that they did not change their decision to transfer Plaintiff in light of his comments. The committee's transfer decision was based on Plaintiff's extreme security risk and the Court will not interfere with that decision. *Garza v. Miller*, 688 F.2d 480, 488 (7th Cir. 1982) (decisions to transfer an inmate "are entirely within the discretion of prison authorities"). Finally, like the John Does, it is unclear whether O'Dell or Francois could actually order that Plaintiff be placed in observation.

Only Turck remains. It is important to note that prison officials are not required to perform their duties "flawlessly," nor is negligence enough to establish a constitutional violation. *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). A defendant need not "take perfect action or even reasonable

action[,] . . . his action must be reckless before § 1983 liability can be found." *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2016). Plaintiff's complaint does not establish that Turck acted recklessly in the face of his February 8, 2016 self-harming activity. Though Plaintiff wishes that Turck had immediately contacted PSU, Plaintiff's desires do not dictate what is reasonable. Turck responded immediately once he observed Plaintiff's self-harming activity, and ultimately took Plaintiff to the observation cell. While Turck's conduct may not have been ideal, it does not display recklessness or a total unconcern for Plaintiff's suicide risk. This is reinforced by the vague nature of Plaintiff's pre-harm statement; Plaintiff did not give Turck an affirmative indication that a cutting episode was imminent.

Plaintiff's complaint fails to state any claims upon which relief may be granted. This action must, therefore, be dismissed with prejudice.

Accordingly,

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #6) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's second motion for leave to proceed *in forma pauperis* (Docket #8) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim;

**IT IS FURTHER ORDERED** that the Clerk of Court document that the plaintiff has incurred a "strike" under 28 U.S.C. § 1915(g);

**IT IS FURTHER ORDERED** that the agency having custody of the plaintiff shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If the plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where the inmate is confined; and

**THE COURT FURTHER CERTIFIES** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless the plaintiff offers bonafide arguments supporting his appeal.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of May, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge